# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SHAUWN NETTLES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:13-CV-146 JAR |
| GEORGE LOMBARDI, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendants George Lombardi, Ian Wallace, Cheryl Thompson, Raymond Hopper, Stephen Bergeron, Paul Sanders, Richard Lincoln, Leslie Tyler and Brian Robinson.[1] (Doc. No. 74) The motion is fully briefed and ready for disposition. For the following reasons, Defendants' motion will be granted.

**I.  Background**

Plaintiff Shauwn Nettles is a Missouri inmate who, at all relevant times, was confined at Southeast Correctional Center ("SECC"). (Defendants' Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 75-1 at ¶ 1) Defendant Lombardi was the Director of the Missouri Department of Corrections ("MDOC") (SOF at ¶ 12); Defendant Wallace was the Warden at SECC (SOF at ¶ 13); Defendant Thompson was a Functional Unit Manager of Housing Unit 1 at SECC (SOF at ¶ 14); and Defendants Hopper, Bergeron, Sanders, Lincoln, Tyler and Robinson were Correctional Officers assigned to SECC (SOF at ¶¶ 3, 5, 6, 7, 9, 11).

Plaintiff brings this action for monetary damages and declaratory relief under 42 U.S.C. § 1983 asserting claims against Defendants in their individual and official capacities for excessive

---

[1] Summary judgment was granted in favor of Corizon defendants Michael Hakala, Dana Nix and Kayla Williams on August 31, 2015. (Doc. Nos. 66, 67)

use of force and deliberate indifference to conditions of confinement in violation of the Eighth Amendment. Specifically, Plaintiff alleges Defendants Hopper, Bergeron and Sanders violated his Eighth Amendment rights by using excessive force against him on the evening of January 31, 2013 while transporting him from his housing unit in handcuffs. (Second Amended Complaint ("SAC"), Doc. No. 13 at ¶¶ 18, 38) He further alleges Defendants Lincoln, Tyler and Robinson violated his Eighth Amendment rights by being deliberately indifferent to the conditions of his confinement on January 31, 2013. (SAC at ¶¶ 18, 40) Lastly, Plaintiff alleges Defendants Lombardi, Wallace and Thompson violated his Eighth Amendment rights by implementing policies that deprived him of humane conditions of confinement. (SAC at ¶¶ 18, 41) Defendants move for summary judgment on the grounds that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Alternatively, Defendants assert they are entitled to qualified immunity.

## II.     Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat

summary judgment. Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

**III.    Facts**

On the evening of January 31, 2013, correctional officers Sanders and Bergeron responded to a fight involving Plaintiff in Housing Unit ("HU") 7. (SOF at ¶ 16) According to Sanders and Bergeron, as they attempted to escort Plaintiff away from HU-7, he began to pull away from them and became combative. (SOF at ¶¶ 16-20, 22-26; Affidavit of Paul Sanders ("Sanders Aff."), Doc. No. 75-5; Affidavit of Stephen Bergeron ("Bergeron Aff."), Doc. No. 75-4) In an attempt to control the situation, Bergeron took Plaintiff down to the ground, where he continued to resist and be combative. (Id.) Sanders was kicked and Bergeron was bitten by Plaintiff. (Id.)[2] Additional officers were called to the scene to assist in controlling Plaintiff. (Id.) Plaintiff was then escorted to HU-1. Plaintiff cites exclusively to his deposition testimony to dispute these facts. (Plaintiff's Response to Defendants' SOF ("Pltf.'s Resp."), Doc. No. 77 at ¶¶ 17-20, 22-26; Deposition of Shauwn Nettles ("Nettles depo."), Doc. No. 77-1 at 10-21, 26-35, 41, 79-84)  However, general statements in affidavits and deposition testimony are insufficient to withstand a properly supported motion for summary judgment. Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 909 (8th Cir. 1999) (citing Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997)); Barbee v. Central Parking Systs., Inc., No. 4:06-CV-1716-TIA, 2008 WL 5101008, at *6 (E.D. Mo. Nov. 26, 2008). A non-movant may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative

---

[2] Defendants refer to Exhibit J as photographs of Bergeron's injuries (SOF at ¶ 23); however, Exhibit J is actually a copy of Plaintiff's IRR filed on February 15, 2013. No photographs have been submitted on the record.

evidence that would permit a finding in the non-movant's favor. Wilson v. Int'l Bus. Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995) (citation omitted).

Upon arrival at HU-1, Plaintiff was examined by nurse Dana Nix at approximately 8:50 p.m. (Doc. No. 75-9) According to the notes from Nix's assessment, Plaintiff's condition on arrival was good, with no visible injuries. (Id.) Plaintiff disputes that he sustained no injuries, citing again to his deposition testimony. (Pltf.'s Resp. at ¶ 25) Plaintiff alleges his cell was cold and dirty and that he was not provided with sufficient clothing, bedding, toiletries or cleaning supplies. (SAC at ¶¶ 22-23, 28, 30)

It is undisputed that at all relevant times, MDOC had in effect an administrative grievance procedure for inmates to internally lodge complaints against MDOC and its staff, detailed at Section D5–3.2 of the MDOC Manual, Offender Grievance (2009). (See Doc. No. 75-11; SOF at ¶ 29) According to the grievance procedures, an inmate must file a separate Informal Resolution Request ("IRR") for each complaint. (Id. at Section III.K.1.a (1); SOF at ¶¶ 30, 31) On February 15, 2013, Plaintiff filed IRR No. 12-372 related to the January 31, 2013 incident against Defendant Bergeron, Medical and HU-1 staff stating that Bergeron and "the rest of his crew beat me beyond what was necessary." (Doc. No. 75-10; SOF at ¶ 32) Plaintiff disputes this statement and states that he attempted to comply with the procedures required by MDOC to file an administrative grievance report. (Pltf.'s Resp. at ¶ 32; Affidavit of Shauwn Nettles ("Nettles Aff."), Doc. No. 77-2 at ¶¶ 3-5) He does not, however, support this conclusory assertion with any evidence.

**IV. Discussion**

As a preliminary matter, Plaintiff requests the Court dismiss Defendants' motion for summary judgment to allow time for discovery to determine the facts at issue in this case. (Doc.

No. 78 at 2) Defendants reply that Plaintiff has had sufficient time to complete discovery and conduct any necessary depositions. Furthermore, if Plaintiff required more time, he could have filed a motion with the Court rather than raising the issue for the first time in his opposition to Defendants' summary judgment motion.[3] (Doc. No. 81 at 2)

This is the second time Plaintiff has asserted this argument in this case. In response to the Corizon defendants' summary judgment motion, Plaintiff requested the Court dismiss the motion as premature to allow time for further discovery. (See Doc. No. 59 at 3-4) The Court rejected Plaintiff's request, finding he had not met the requirements of Fed. R. Civ. P. 56(d), which requires a plaintiff to identify specific facts that further discovery might uncover, and show how those facts are relevant in rebutting defendant's showing of an absence of genuine issues of material fact. (Doc. No. 66 at 6-7) (citing Chambers v. The Travelers Cos., Inc., 764 F. Supp. 2d 1071, 1082 (D. Minn. 2011) (citing Ray v. American Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010)).

Here, as before, Plaintiff has not submitted a Rule 56(d) affidavit and his memorandum in opposition to the motion for summary judgment provides no specificity about the discovery he would pursue and what facts relevant to his claims it might uncover. "Rule 56([d]) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct] … Specific facts sought must be identified. Mere speculation that there is some relevant evidence not yet discovered will never suffice." Ray, 609 F.3d at 923 (internal

---

[3] Under the original Case Management Order, the discovery deadline was October 30, 2015 and the dispositive motion deadline was November 30, 2015. (Doc. No. 50) Plaintiff requested, and the Court granted, an extension of time to complete discovery until December 22, 2015 and to file a motion for summary judgment until January 22, 2016. (Doc Nos. 71 and 72) Defendants filed their motion for summary judgment on January 22, 2016. (Doc. No. 74) At no time prior did Plaintiff request additional time to conduct discovery.

quotation marks and citations omitted). Accordingly, the Court finds no reason to grant Plaintiff's request to dismiss Defendants' motion or postpone its ruling thereon, see Pittman v. Gaines, 905 F.2d 199, 201 (8th Cir. 1990) (a court may proceed to enter summary judgment without allowing additional discovery if there was no evidence concerning what further discovery might produce), and turns to the merits of Defendants' summary judgment motion.

**A. Eleventh Amendment immunity**

Defendants first argue the Eleventh Amendment bars Plaintiff's § 1983 claims against them in their official capacities. (Doc. No. 75 at 3-4; Doc. No. 81 at 4-5) "The sovereign immunity of the States recognized in the Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity." Tinzie v. Ark. Dep't of Workforce Servs., No. 4:11-CV-00683 SWW, 2012 WL 1739859, at *3 (E.D. Ark. May 16, 2012) (citing Seminole Tribe v. Florida, 517 U.S. 44, 74 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Edelman v. Jordan, 415 U.S. 651, 663 (1974)).[4]

"In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief." Tinzie, 2012 WL 1739859, at *3 (citing Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997)); see also Rodgers v. Univ. of

---

[4] The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Missouri Bd. of Curators, 56 F. Supp. 3d 1037, 1049 (E.D. Mo. 2014), *aff'd as modified sub nom*. Rodgers v. Curators of Univ. of Missouri Sys., No. 14-3832, 2015 WL 5254942 (8th Cir. Sept. 10, 2015). Claims brought against a defendant in his or her official capacity are assumed to be claims against the defendant's public employer, which in this case is the Missouri Department of Corrections ("MDOC"), a state agency. Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985)); Walker v. Mo. Dep't of Corr., 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing MDOC as state agency); see also Cooper v. Schriro, 189 F.3d 781, 783 (8th Cir. 1999) (per curiam) (de novo review).

While Plaintiff references exceptions to the Eleventh Amendment that "may or may not apply" in this case (Doc. No. 78 at 3-4), he does not argue or otherwise demonstrate that MDOC is somehow exempt from this Eleventh Amendment bar. See Glick v. Henderson, 855 F.2d 536, 540 (8th Cir. 1988). Indeed, as determined by the Supreme Court in Quern v. Jordan, 440 U.S. 332 (1979), neither the history nor the text of § 1983 expresses any congressional intent to overturn the constitutionally guaranteed immunity of the states. Id. at 342-45. See also Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983.").

Thus, the Court finds and concludes that to the extent Plaintiff alleges any cause of action under § 1983 against Defendants in their official capacities, those claims are barred by sovereign immunity. The Court will grant summary judgment to Defendants as to Plaintiff's claims against them in their official capacities. Williamson v. Steele, No. 4:12-CV-1548 CAS, 2015 WL 3620607, at *7 (E.D. Mo. June 9, 2015).

### B. Eighth Amendment

**1. Excessive use of force (Defendants Hopper, Bergeron and Sanders)**

Next, Defendants argue they are entitled to summary judgment on Plaintiff's excessive force claim because they acted reasonably to resolve a disturbance that posed significant risks to the safety of inmates and prison staff. (Doc. No. 75 at 5) The "core judicial inquiry" in a suit for excessive use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation and quotations omitted); Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Circuit has held that "[r]esolution of the constitutional issue turns on the circumstances of the individual case." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). "The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary and malicious." Id. at 873. Relevant factors include the need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the injury inflicted. Id. at 872 (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In considering an excessive use of force claim, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr., 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[ ] the improper resolution of credibility issues," which are assessments for the trier of fact and not for summary judgment. Id. (quoting Johnson, 12 F.3d at 137).

**Defendants Hopper and Sanders**

Insofar as Plaintiff brings claims against Hopper for use of excessive force for the events of January 31, 2013, Plaintiff does not dispute that Hopper was not on duty on January 31, 2013, and thus not involved in a use of force against him on January 31, 2013. (Doc. No. 75 at 6; SOF at ¶¶ 27, 28; Pltf.'s Resp. at ¶¶ 27, 28) In fact, Plaintiff admits he never even saw Hopper on January 31, 2013. (SOF at ¶ 44; Pltf.'s Resp. at ¶ 44)

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)). Plaintiff, therefore, must present specific allegations of fact as to either direct personal involvement, direction of others, or a knowing failure to supervise or act, which resulted in his alleged injuries. See Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility); Ronnei v. Butler, 597 F.2d 564, 566 (8th Cir. 1979). Here, Plaintiff has failed to establish Hopper's personal involvement. Because Plaintiff does not claim Hopper was involved in the use of excessive force on January 31, 2013, the Court will grant Defendants' motion for summary judgment as to Hopper, and Hopper will be dismissed from this case. Walker v. Kemna, No. 10-4186-CV-C-FJG-P, 2011 WL 5374567, at *2-3 (W.D. Mo. Nov. 4, 2011).

Similarly, Plaintiff admits Sanders never caused him any harm. (SOF at ¶ 45; Pltf.'s Resp. at ¶ 45) Plaintiff testified on deposition that the only person he could identify as causing him harm was Bergeron; he did not know whether Sanders applied any force. (Deposition of Shauwn Nettles ("Nettles Depo."), Doc. No. 77-1 at 57:16-59:10) As set out above, the nonmoving party bears the burden of setting forth specific facts showing there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson, 477 U.S. at 249; Celotex

Corp., 477 U.S. at 324. Here, Plaintiff has not done so, as he has presented no facts to support a finding of excessive force by Sanders. Accordingly, the Court will grant Defendants' motion for summary judgment as to Sanders, and Sanders will be dismissed from this case. Walker, 2011 WL 5374567, at *2-3.

**Defendant Bergeron**

As for Plaintiff's claim against Bergeron, there is no dispute that some force was used in an attempt to gain Plaintiff's compliance. Given the circumstances and Plaintiff's admissions, however, the Court finds and concludes the force was not excessive as a matter of law. The Eighth Circuit has held that failure to comply with a direct order is sufficient grounds for a use of force by prison officials when dealing with a recalcitrant inmate. See Jones v. Shields, 207 F.3d 491, 497 (8th Cir. 2000) (capstun after prisoner refused a direct order from his supervisor not excessive use of force). Bergeron and Sanders responded to a fight in HU-7 involving Plaintiff and were ordered to escort him from HU-7 to HU-1. Although Plaintiff disputes that he was disobeying directives or pulling away from the officers and being combative (Doc. No. 78 at 4; Nettles depo. at 19-21), he admits punching an officer in the chest, who then called for backup. (Nettles depo. at 19:8-20) Plaintiff also admits that after Bergeron told him to "[s]top walking so fast in front of me," he continued to do so ("I was just walking at the pace I was walking"), at which point Bergeron took him to the ground. (Id. at 21:5-14)

The Court must assess an excessive force claim in light of the fact that prison settings sometimes require the use of force. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). An inmate escape from an escort poses a security risk for officers and inmates. (Affidavit of George Lombardi ("Lombardi Aff."), Doc. No. 75-7; Affidavit of Ian Wallace ("Wallace Aff."), Doc. No. 75-8) Plaintiff fails to point to any evidence demonstrating Defendant Bergeron used

excessive force against him in violation of the Eighth Amendment.[5] Here, the evidence of record indicates that Bergeron responded with force only as necessary to address a reasonably perceived threat and restore discipline and not "maliciously and sadistically for the very purpose of causing harm." Perry v. Martin, No. 4:10-CV-2436 SNLJ, 2013 WL 6331474, at *3 (E.D. Mo. Dec. 5, 2013).

Defendants also submit the emergency encounter form completed for Plaintiff on the day of the incident to establish that Plaintiff sustained no injuries. Plaintiff's condition was "good" on arrival and no visible injuries were reported at the time of assessment. Plaintiff actually "denie[d] complaints," and his condition on discharge was "satisfactory." (Doc. No. 75-9) "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Hopkins v. Reed, No. 1:13-CV-126 ACL, 2015 WL 5076994, at *9 (E.D. Mo. Aug. 27, 2015) (quoting Wilkens v. Gaddy, 559 U.S. 34, 37-38 (2010)).

Plaintiff testified that at the time he couldn't tell whether he was injured, but that his face, arms and knees hurt. (Nettles depo. at 27:8-14) Even if Plaintiff had suffered small injuries, as he suggests, the use of force capable of causing those injuries was not of a sort "repugnant to the conscience of mankind." See Whitely, 475 U.S. at 327 (citation and internal quotation marks omitted). "Summary applications of force are constitutionally permissible when prison security and order ... has been placed in jeopardy." Jones, 207 F.3d at 496. Because Plaintiff himself makes critical admissions regarding the disorder he caused by punching an officer in the chest

---

[5] Plaintiff asserts there is a videotape of the alleged use-of-force incident; however, there is no evidence that such a videotape exists. He makes a passing reference to a videotape in his deposition, but those portions of the deposition transcript were not made part of the record.

and disobeying directives, the slight injuries he may have suffered in the process of subduing him were not unreasonable.

Giving appropriate consideration to the evidence of record and Plaintiff's de minimis injuries, the Court finds there is no genuine dispute that the force Bergeron used to move Plaintiff on January 31, 2013 was applied in a good faith effort to restore discipline and not maliciously or sadistically for the purpose of causing harm. Accordingly, Bergeron is entitled to judgment as a matter of law on Plaintiff's claim of excessive force. Cummings v. Caspari, 821 F. Supp. 1291, 1293 (E.D. Mo. 1993); Witte v. Culton, No. 4:11-CV-2036 ERW, 2013 WL 4666334, at *2 (E.D. Mo. Aug. 30, 2013).

**2. Deliberate indifference to conditions of confinement (Defendants Lincoln, Tyler and Robinson)**

Defendants contend that Plaintiff failed to exhaust his administrative remedies in relation to his deliberate indifference claims against Lincoln, Tyler and Robinson. (Doc. No. 75 at 6-8) There is no dispute that during the relevant time period, MDOC had in effect a three-step process for inmates to internally lodge complaints against MDOC and its staff, detailed at Section D5–3.2 of the MDOC Manual, Offender Grievance (2009).[6] (See Doc. No. 75-11; SOF at ¶ 29) It is also undisputed that on February 15, 2013, Plaintiff filed an IRR related to the January 31, 2013 incident lodging a complaint against Bergeron, Medical and HU-1 Staff. (Doc. No. 75-10) Defendants argue that Plaintiff never sought relief through the grievance process regarding his

---

[6] First, an inmate files an Informal Resolution Request ("IRR"). (Section III.A.3) An offender is allowed to file only one complaint on one IRR form. (Section III.K.l.a.(l)) The IRR must be filed within fifteen days of the incident. (Section III.K.1) If dissatisfied with the IRR response, the inmate may file a formal grievance within seven days from the date of the IRR response. (Section III.L.1, 4) Failure to timely file a grievance results in the complaint being abandoned. (Section III.L.4) The last stage of the offender grievance procedure is the grievance appeal. An inmate must file an appeal within seven calendar days from the date of the offender grievance response to avoid the appeal being abandoned. (Section III.M.1) After receiving the grievance appeal response, the inmate has exhausted the grievance process.

specific allegations that Lincoln, Tyler and Robinson were deliberately indifferent to his conditions of confinement. (Doc. No. 75 at 8; Doc. No. 81 at 7-8) In addition, his multiple allegations of wrongdoing against multiple complainants are separate and distinct and occurred at different periods of time and thus are not in compliance with the administrative grievance procedure that permits only one complaint per IRR form. (Id.)

Plaintiff disputes that he did not file or initiate any grievance procedure other than the IRR filed on February 15, 2013, and states he attempted to comply with the procedures required by the Missouri Department of Corrections. (Doc. No. 78 at 5-7; Pltf.'s Resp. to SOF at ¶ 32, Doc. No. 77 at ¶ 32; Affidavit of Shauwn Nettles ("Nettles Aff."), Doc. No. 77-2 at ¶¶ 3-5) He does not, however, support these conclusory assertions with any evidence. He also claims he was not provided with a MDOC Manual D5-3.2 Offender Grievance outlining his rights, the procedures required or the process for exhausting his administrative remedies. (Doc. No. 78 at 5-6; Nettles Aff. at ¶ 3)

The Court addressed this identical argument made by Plaintiff in his opposition to the Corizon defendants' motion for summary judgment and found, based on the undisputed evidence of record, that Plaintiff was well aware of the grievance process, having filed 21 IRR grievances between 2003 and 2012. (See Doc. No. 66 at 8) Again, Plaintiff presents no evidence that any prison official thwarted an attempt to initiate the grievance procedures or that any official made it impossible for him to file grievances. In fact, the evidence of record shows beyond genuine dispute that the grievance procedure was available to him and that he did not follow it in this case.

Because Plaintiff did not exhaust his remedies in accordance with 42 U.S.C. § 1997e (a) as to his deliberate indifference claims against Lincoln, Tyler and Robinson, this Court does not

specific allegations that Lincoln, Tyler and Robinson were deliberately indifferent to his conditions of confinement. (Doc. No. 75 at 8; Doc. No. 81 at 7-8) In addition, his multiple allegations of wrongdoing against multiple complainants are separate and distinct and occurred at different periods of time and thus are not in compliance with the administrative grievance procedure that permits only one complaint per IRR form. (Id.)

Plaintiff disputes that he did not file or initiate any grievance procedure other than the IRR filed on February 15, 2013, and states he attempted to comply with the procedures required by the Missouri Department of Corrections. (Doc. No. 78 at 5-7; Pltf.'s Resp. to SOF at ¶ 32, Doc. No. 77 at ¶ 32; Affidavit of Shauwn Nettles ("Nettles Aff."), Doc. No. 77-2 at ¶¶ 3-5) He does not, however, support these conclusory assertions with any evidence. He also claims he was not provided with a MDOC Manual D5-3.2 Offender Grievance outlining his rights, the procedures required or the process for exhausting his administrative remedies. (Doc. No. 78 at 5-6; Nettles Aff. at ¶ 3)

The Court addressed this identical argument made by Plaintiff in his opposition to the Corizon defendants' motion for summary judgment and found, based on the undisputed evidence of record, that Plaintiff was well aware of the grievance process, having filed 21 IRR grievances between 2003 and 2012. (See Doc. No. 66 at 8) Again, Plaintiff presents no evidence that any prison official thwarted an attempt to initiate the grievance procedures or that any official made it impossible for him to file grievances. In fact, the evidence of record shows beyond genuine dispute that the grievance procedure was available to him and that he did not follow it in this case.

Because Plaintiff did not exhaust his remedies in accordance with 42 U.S.C. § 1997e (a) as to his deliberate indifference claims against Lincoln, Tyler and Robinson, this Court does not

review the claims on the merits and the claims will be dismissed.[7] See Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015) (citing Jones v. Bock, 549 U.S. 199, 210-20 (2007) ("[T]here is no question that exhaustion is mandatory under [§ 1997e (a)] and that unexhausted claims cannot be brought in court.")). See also Benjamin v. Ward County, 632 Fed. Appx. 301 (8th Cir. 2016).

**Defendants Lombardi, Wallace, and Thompson**

Plaintiff's allegations against Lombardi, Wallace, and Thompson are based on the fact that they are in supervisory positions within MDOC. Section 1983 does not authorize liability under a theory of *respondeat superior*. See Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691 (1978). "Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (internal citations and footnote omitted).

It is settled that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Reynolds v. Dormire, 636 F.3d 976, 981 (8th Cir. 2011) (quoting Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). A supervisor may be liable under § 1983 if he is involved in "making, implementing or enforcing a policy decision that created unconstitutional conditions." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009) (citing Trudeau v. Wyrick, 713 F.2d 1360, 1367 (8th Cir. 1983)); Boyd, 47 F.3d at 968 (internal citations and footnote omitted). Here, however, Plaintiff makes only conclusory allegations

---

[7] Nevertheless, Plaintiff does not dispute that Lincoln and Tyler were not on duty at SECC on January 31, 2013, and thus not personally involved in or directly responsible for the incidents that allegedly harmed him. (Doc. No. 75 at 9-10; SOF at ¶¶ 4, 8, 10; Pltf.'s Resp. at ¶¶ 4, 8, 10) Plaintiff's claims are, therefore, not cognizable under § 1983. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (citing Marchant v. City of Little Rock, Ark., 741 F.2d 201, 2014 (8th Cir. 1984)).

against Lombardi, Wallace and Thompson, i.e., that their implementation of policies deprived him of humane conditions of confinement and violated his Eighth Amendment rights. (SAC at ¶ 41) There are no factual allegations as to their specific actions or knowledge, and Plaintiff fails to identify any policy that caused his injury. See Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 674 (8th Cir. 2007) ("[A] plaintiff must identify a governmental 'policy or custom that caused the plaintiff's injury' to recover from a governmental entity under § 1983.") (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citations and quotations omitted)).

Because Plaintiff has no evidence showing that Lombardi, Wallace and/or Thompson were personally involved in implementing any policy that violated his constitutional rights related to the conditions of his confinement, these defendants are entitled to summary judgment.

### C. Qualified Immunity

Finally, Defendants argue Plaintiff's claims against them are barred by qualified immunity because Plaintiff has not alleged a deprivation of a constitutional right. (Doc. No. 75 at 14) "Qualified immunity shields public officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (quotations omitted). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear that the conduct was unlawful in the situation confronted. Turner v. Mull, 997 F. Supp. 2d 985, 999-1000 (E.D. Mo. 2014), aff'd, 784 F.3d 485 (8th Cir. 2015) (citing Saucier v.

Katz, 533 U.S. 194, 202 (2001)); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). If no constitutional violation occurred, the evaluation ends there. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case.").

For the reasons set forth above, the Court has found that the facts, viewed in the light most favorable to the Plaintiff, do not demonstrate the deprivation of a constitutional right. As a result, Plaintiff fails to satisfy the first prong, and Defendants are protected from Plaintiff's claims against them in their individual capacities by the doctrine of qualified immunity. Baker v. Bryan, No. 4:14-CV-333 JAR, 2015 WL 5735142, at *6 (E.D. Mo. Sept. 29, 2015).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [74] is **GRANTED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 29th day of August, 2016.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**